LEHEW *et al.* v. BRUMMELL *et al.*, *Appellants.*

DIVISION ONE.

1.  **Federal Constitution:** COLORED CHILDREN: SEPARATE SCHOOLS: FOURTEENTH AMENDMENT. The constitution and laws of this state providing for *separate* schools for colored children are not forbidden by or in conflict with the fourteenth amendment to the federal constitution.

2.  ——: ——: ——: ——. Equality and not identity of privileges is guaranteed to the citizen by said amendment.

3.  ——: ——: ——: ——. Nor does the fact that colored children have to go further to attend school than white children furnish a substantial ground of complaint on the part of the former.

4.  **Practice:** INFANT'S GUARDIAN AD LITEM. A suit cannot be further prosecuted against an infant defendant after service of process, until a guardian *ad litem* has been appointed.

*Appeal from Grundy Circuit Court.*—HON. G. D. BURGESS, Judge.

AFFIRMED.

*E. M. Harber* for appellants.

Any attempt on the part of the state to deprive certain of the children of a certain school district from attending the only school in said district, of which they are listed and properly enumerated, for the sole and only reason that they are colored, or of African descent, is in violation of section 1 of the fourteenth amendment to the constitution of the United States. *Strauder v. West Virginia,* 100 U. S. 303; *Virginia v. Rives,* 100 U. S. 313; *United States v. Stanley,* 109 U. S. 8; *Elk v. Wilkins,* 112 U. S. 94; *Matter of Hall,* 50 Conn. 131; *Board of Ed. v. Tinnon,* 13 Cent. L. J. (Kan.) 272; *People ex rel. v. Gallagher,* 93 N. Y. 438. Judgment

was improperly rendered against Ananias, Cordelia, Lord Thomas and Odes Brummell, they being infants. R. S. 1889, sec. 2005; *Clark v. Crosswhite*, 28 Mo. App. 34; *Railroad v. Campbell*, 62 Mo. 585; *Campbell v. Gaslight Co.*, 84 Mo. 352; *Goode v. Crow*, 51 Mo. 213; *Robinson v. Hood*, 67 Mo. 660.

*R. A. DeBolt* for respondents.

(1) A statute establishing separate free public schools for white and colored children is in harmony with the constitution of this state (art. 11, sec. 3), and is not in violation of the fourteenth amendment of the constitution of the United States, and, where appropriate schools for colored children are maintained, such children may be lawfully excluded from schools established for white children. *State ex rel. v. McCann*, 21 Ohio St. 198; *Van Camp v. Board*, 9 Ohio St. 407; *State ex rel. v. Cincinnati*, 19 Ohio, 178; *Ward v. Wood*, 48 California, 36; 17 Am. Rep. 405; *Roberts v. Boston*, 5 Cushing, 198; *People v. Gallagher*, 93 N. Y. 438, and citations; 45 Am. Rep. 232; *Cory v. Carter*, 17 Am. Rep. 738; 48 Ind. 327; *State ex rel. v. Duffy*, 8 Am. Rep. 713; 7 Nevada, 342. (2) The fact that, by the organization of separate schools, a person is required to go further to reach his place of instruction than he otherwise would, is a mere incident to any classification of the pupils in the public schools, and affords no substantial ground of complaint. *People ex rel. v. Gallagher*, 93 N. Y. 451; *Ward v. Flood*, 48 Cal. 52, 53.

BLACK, J.—The five plaintiffs in this case reside in school district number 4, in Grundy county, and each has children entitled to attend the public school maintained therein for the education of white children. In September, 1887, when this suit was commenced, the defendant Barr was the teacher, and three of the defendants were directors of the school district. The defendant Brummell is a man of Africant descent, and at the

last-mentioned date had four children, all of whom resided with him in said district and were of the ages entitling them to attend the public schools. These four children were the only colored children of school age in the district. No separate school was ever established or maintained therein for the education of colored children; but there was such a separate school in the town of Trenton in the same county, three and one-half miles from Brummell's residence. No white child in district number 4 had to go more than two miles to reach the schoolhouse. These colored children were permitted to attend the school maintained for white children in district number 4 for a short time.

On the foregoing facts a temporary injunction was awarded the plaintiffs, restraining Brummell's children from attending the school so established for white children, which was made perpetual on the final hearing of the cause, and the defendants appealed.

But two questions are presented by the briefs for our consideration. The first is, that the laws of this state concerning the education of colored children are in conflict with section 1 of the fourteenth amendment of the constitution of the United States, and, therefore, void.

Section 1, of article 11, of the constitution of this state, makes it the duty of the general assembly to establish and maintain free public schools for the gratuitous instruction of all persons in this state between the ages of six and twenty years; and section 3 of the same article declares: "Separate free public schools shall be established for the education of children of African descent."

A system of free public schools has been established by general laws throughout the state, and for all the purposes of this case it will be sufficient to notice the statutes concerning colored schools. The first section of the amendatory act of 1887 (Acts, 1887, p. 264) provides: "When there are within any school district in

Lehew v. Brummell.

this state fifteen or more colored children of school age, the school board of such school district shall be and they are hereby authorized and required to establish and maintain within such school district a separate free school for said colored children ;" and the section goes on to say, in substance, that the term of such school and the advantages and privileges thereof shall be the same as provided for other schools of corresponding grade. "Should any school board neglect or refuse to comply with the provisions of this section, such school district shall be deprived of any part of the public funds for the next ensuing school year." The second section provides that, "when the number of colored children of school age residing in any school district shall be less than fifteen, they shall have the privilege and are entitled to attend school in any district in the county wherein a school is maintained for colored children." Detailed provisions are then made whereby the district in which such children reside must pay its proper share of the expenses of maintaining the school in the other district which the children attend.

These statute laws simply carry out and put in operation the command of that section of our constitution before quoted, and the objection now made is leveled at the constitutional provision, and it is that which we are asked to strike down, because of the contention that it violates section 1 of the fourteenth amendment of the constitution of the United States, which declares : " All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

This section treats of different and distinct subjects, and the defendants do not point out or indicate to us the clause upon which they rely. The clause which declares that all persons born or naturalized in the United States are citizens of the United States, and of the state wherein they reside, can have no application to the case in hand further than this, that it points out and makes a distinction between citizenship of the United States and citizenship of a state. The next clause ordains, that no state shall make or enforce any law which shall abridge the privileges or immunities of a citizen of the United States. The distinction just mentioned is carried into this provision, which relates, and relates only, to privileges and immunities of a citizen of the United States as distinguished from the privileges and immunities of a citizen of a state. *Slaughter-House Cases*, 16 Wall. 74; *Bradwell v. State*, 16 Wall. 130.

The common-school system of this state is a creature of the state constitution and the laws passed pursuant to its command. The right of children to attend the public schools and of parents to send their children to them is not a privilege or immunity belonging to a citizen of the United States, as such. It is a right created by the state, and a right belonging to citizens of this state, as such. It, therefore, follows that the clause in question is without application to the case in hand.

We then come to the last clause, which is prohibitory of state action. It says, nor shall any state deny to any person within its jurisdiction the equal protection of the laws. Speaking of this clause in its application to state legislation as to colored persons, Justice STRONG said: "What is this but declaring that the law in the states shall be the same for the black as for the white; that all persons, whether colored or white, shall stand equal before the laws of the states, and, in regard to the colored race, for whose protection the amendment was primarily designed, that no discrimination

Lehew v. Brummell.

shall be made against them by law because of their color?" *Strauder v. West Virginia,* 100 U. S. 303. We then come to the simple question whether our constitution and the statutes passed pursuant to it, requiring colored persons to attend schools established and maintained at public expense for the education of colored persons only, deny to such persons "equal protection of the laws."

It is to be observed in the first place that these persons are not denied the advantages of the public schools. The right to attend such schools and receive instruction thereat is guaranteed to them. The framers of the constitution and the people by their votes in adopting it, it is true, were of the opinion that it would be better to establish and maintain separate schools for colored children. The wisdom of the provision is no longer a matter of speculation. Under it, the colored children of the state have made a rapid stride in the way of education to the great gratification of every right-minded man. The schools for white and black persons are carried on at a great public expense, and it has been found expedient and necessary to divide them into classes. That separate schools may be established for male and female pupils cannot be doubted. No one would question the right of the legislature to provide separate schools for neglected children who are too far advanced in years to attend the primary department; for such separate schools would be to the great advantage of that class of pupils. So, too, schools may be classed according to the attainments of the attendants in the branches taught. That schools may be classed on these and other grounds without violating the clause of the federal constitution now in question, must be conceded. But it will be said the classification now in question is one based on color, and so it is; but the color carries with it, natural race peculiarities which furnish the reason for the classification. There are differences in races, and between individuals of the same race, not created by human laws,

some of which can never be eradicated. These differences create different social relations recognized by all well-organized governments. If we cast aside chimerical theories and look to practical results, it seems to us it must be conceded that separate schools for colored children is a regulation to their great advantage.

It is true Brummell's children must go three and one-half miles to reach a colored school, while no white child in the district is required to go further than two miles. The distance which these children must go to reach a colored school is a matter of inconvenience to them, but it is an inconvenience which must arise in any school system. The law does not undertake to establish a school within a given distance of anyone, white or black. The inequality in distances to be traveled by the children of different families is but an incident to any classification, and furnishes no substantial ground of complaint. *People ex rel. King v. Gallagher*, 93 N. Y. 438–451.

The fact must be kept in mind, for it lies at the foundation of this controversy, that the laws of this state do not exclude colored children from the public schools. Such children have all the school advantages and privileges that are afforded white children. The fact that the two races are separated for the purpose of receiving instruction deprives neither of any rights. It is but a reasonable regulation of the exercise of the right. As said in the case just cited, "Equality and not identity of privileges and rights is what is guaranteed to the citizen." Our conclusion is that the constitution and laws of this state providing for separate schools for colored children are not forbidden by, or in conflict with, the fourteenth amendment of the federal constitution; and the courts of last resort in several states have reached the same result. *People ex rel. King v. Gallagher, supra; State ex rel. Garnes v. McCann*, 21 Ohio St. 198; *Cory v. Carter*, 48 Ind. 328; *Ward v. Flood* 48 Cal. 36.

A like result was reached in Massachusetts under a constitutional provision similar to the fourteenth amendment as to the question in hand. *Roberts v. The City of Boston,* 5 Cushing, 198   We are, also, of the opinion that our conclusion is in accord with the cases cited from the supreme court of the United States, the final arbiter of all such questions.

2.   Brummell's minor children were made defendants, and the suit was prosecuted to final judgment against them, as well as against the other defendants, without the appointment of a guardian *ad litem* for the infants.   After infant defendants have been served with process the suit cannot be further prosecuted until a guardian *ad litem* is appointed.   R. S. 1879, sec. 3477. As to these minors, whose names will be found in the record, the judgment is reversed, but as to the other defendants it is affirmed.   All concur.