[Civil No. 1222.   Filed July 15, 1912.]

[126 Pac. 273.]

L. D. DAMERON, SIMS ELY, and W. G. TOLLESON, Constituting the Board of School Trustees for School District No. 1 of Maricopa County, Appellants, v. SAMUEL F. BAYLESS, Appellee.

1. CONSTITUTIONAL LAW—SCHOOLS AND SCHOOL DISTRICTS—EQUAL PROTECTION OF LAW.—Laws of 1909, chapter 67, section 1, amending subdivision 2, paragraph 2179, Civil Code of 1901, providing for the segregation of negro children from white children in the public schools, is constitutional, not being a denial of the equal protection of the law.

2. SCHOOLS AND SCHOOL DISTRICTS—PUBLIC SCHOOLS—SEGREGATION.— Under Laws of 1909, chapter 67, section 1, amending subdivision 2, paragraph 2179, Civil Code of 1901, providing for the segregation of negro children and that the school board shall provide all accommodations made necessary by said segregation, negro pupils cannot complain, where equal accommodations as regards building

and teachers are furnished them, that they are required to go a greater distance to reach their school than similarly situated white children.

3. Schools and School Districts — Public Schools—Pupils—Segregation.—Nor can complaint be made that unequal accommodations are furnished them, where they are required to cross steam railroad tracks; it being no more dangerous than to cross an ordinary city street.

APPEAL from a judgment of the District Court of the Third Judicial District, in and for the County of Maricopa. Edward Kent, Judge. Reversed and remanded.

### STATEMENT OF FACTS BY THE COURT.

This is an action brought by appellee, Samuel F. Bayless, the father of two children of school age, residing in school district No. 1 of Maricopa county, against the school board, to restrain them from enforcing the compulsory attendance school law as against appellee's children. The questions raised involve the constitutionality of chapter 67 of the Session Laws of the Twenty-fifth Legislative Assembly of the territory of Arizona, as contained in subdivision II of paragraph 2179, Civil Code of 1901, as amended by section 1 thereof. This section provides that the school board "may segregate pupils of the African from pupils of the white races, and to that end are empowered to provide all accommodations made necessary by such segregation," when the number of African pupils shall exceed eight in number in any school district. In pursuance of the provisions of the law, the African pupils exceeding eight in number in the school district, the school board passed a resolution of segregation, and to prevent the enforcement of the order of the board, as to the children of appellee, this action was brought.

The case was tried before the court, and after hearing the evidence the court made the following finding of fact, among others, to wit: "That said school, situated on Madison street, between Fifth and Sixth streets, in said city of Phoenix, at which school all the colored children attending public schools are now attending, is the newest, best constructed, and most sanitary of any of the school buildings in said district; that its equipment is equal, if not superior, to any of the other school buildings; that the number of children attending said school

being relatively small, under the present plan each child receives more individual attention from the teachers than in the larger classes in the white schools. The course of study, manual training, and curriculum generally is the same for the colored children of said school as it is for the white children in the other schools; that at said Madison street school the colored children are as well off as the white children attending the other schools; that, therefore, under the order of segregation hereinbefore referred to, passed by the board of trustees of said school district, prior to the commencement of this suit, the colored children were able to receive and did receive, so far as their instruction was concerned, equal educational facilities with the white children of said district; that it is dangerous for any child of the African race or of any race to be compelled to cross dangerous railroad tracks to reach the school which they attend, but that the children of this petitioner crossed the railroad tracks at the end of the last school year,'' being the same railroad tracks that they were obliged to cross in attending the Madison street school. He also found that, by reason of the railroad crossings, the lives and limbs of the children were exposed to danger.

As conclusions of law, the court found: (1) That petitioner's children were compelled to go a greater distance to reach the Madison street school building than children of the same age and grade living in the same neighborhood of other nationalities; (2) that the children of petitioner were compelled, in reaching the Madison street school building, to cross the tracks of two steam railroads; and for these two reasons they were ''not afforded educational facilities substantially equal to the educational facilities given and afforded to the school children of said district'' of the same grade who were not of the African race.

Mr. G. P. Bullard, District Attorney, and Mr. Frank H. Lyman, County Attorney, for Appellants.

No appearance for Appellee.

ROSS, J.—Preliminary to discussing the above propositions, it may be said that the highest courts of practically every state, where this question has been raised, have held the

segregation of white children from colored children in the schools constitutional.   35 Cyc. 1111; *Lehew* v. *Brummell,* 103 Mo. 546, 23 Am. St. Rep. 895, 11 L. R. A. 828, 15 S. W. 765; *People* v. *Gallagher,* 93 N. Y. 438, 45 Am. Rep. 232; *Cory* v. *Carter,* 48 Ind. 327, 17 Am. Rep. 738; *McMillan* v. *District No. 4,* 107 N. C. 609, 10 L. R. A. 823, 12 S. E. 330; *Ward* v. *Flood,* 48 Cal. 36, 17 Am. Rep. 405; *Richardson* v. *Board etc.,* 72 Kan. 629, 84 Pac. 538; *Chrisman* v. *City of Brookhaven,* 70 Miss. 477, 12 South. 458; *People* v. *Queen's Borough,* 161 N. Y. 598, 48 L. R. A. 113, 56 N. E. 81; *Reynolds* v. *City of Topeka,* 66 Kan. 672, 72 Pac. 274; *Board of Education of Kingfisher County* v. *Board of Commrs. of Kingfisher County,* 14 Okl. 322, 78 Pac. 455; *State* v. *Duffy,* 7 Nev. 342, 8 Am. Rep. 713.

The United States cases, both in the supreme court and in the district courts, on the same and kindred questions, have held such laws constitutional.   *Plessy* v. *Ferguson,* 163 U S. 537, 41 L. Ed. 256, 16 Sup. Ct. Rep. 1138; *United States* v. *Buntin* (C. C.), 10 Fed. 730; *Wong Him* v. *Callahan* (C. C.), 119 Fed. 381.

The court's conclusions of law will be considered in their order.

1. The matter of nearness or remoteness of schoolhouse to the pupils' residence ordinarily should have no place as a factor in determining the adequacy and sufficiency of school facilities.   That the child has to go a greater distance than other children may be a hardship, but that hardship may arise from many causes and often is occasioned by the parents' conveniences and necessities.   Increase of population makes demands for more school buildings, and it is not possible to locate new buildings equidistant from all patrons.   The law will not measure with a yardstick these distances, but it will and does require that, after children arrive at the school building, it be as good a building and as well equipped and furnished and presided over by as efficient a corps of teachers as the schools provided for the children of other races.   In the case of *Lehew* v. *Brummell,* 103 Mo. 546, 552, 23 Am. St. Rep. 895, 11 L. R. A. 828, 15 S. W. 765, 766, the court said: "It is true Brummell's children must go three and one-half miles to reach a colored school, while no white child in the district is required to go further than two miles.   The dis-

tance which these children must go to reach a colored school is a matter of inconvenience to them, but it is an inconvenience which must arise in any school system. The law does not undertake to establish a school within a given distance of anyone, white or black. The inequality in distance to be traveled by the children of different families is but an incident to any classification, and furnishes no substantial ground of complaint. *People ex rel. King* v *Gallagher,* 93 N. Y. 438–451, 45 Am. Rep. 232.'' In the last-mentioned case the court said: ''It is quite impracticable for the authorities to take into account and provide for the gratification of the taste, or even the convenience, of the individual citizen in respect to the place or conditions under which he shall receive an education. In the nature of things one pupil must always travel further to reach a fixed place of instruction than another, and so, too, the resident of one district is frequently required to go further to reach the school established in his own district than a school in an adjoining district; but these are inconveniences incident to any system, and cannot be avoided. It is only when he can show he is deprived of some substantial right, which is accorded to other citizens and denied to him, that he can successfully claim that his legal rights have been invaded.''

2. The crossing of railroad tracks as another inconvenience is attended with risks of being run down; but in these days of automobiles and street railways it behooves a pedestrian, wherever he is, to keep a sharp lookout. Indeed, the steel rails, the ringing bells, the escape of steam, all admonish the pedestrian and warn of dangers much more effectively than the more frequent in passage, but less noisy and bulky, instruments of commerce and transportation fraught with a like danger to life and limb by coming in contact therewith. It is a matter of common knowledge, which we may not overlook, that many more accidents occur from the careless operation of automobiles and street railways than on railways operated by steam. It would be difficult for children located in any part of school district No. 1 of Maricopa county to attend school without being subject to the hazards incident to the operation of those instruments of commerce and conveyance.

As was said in the case of *King* v. *Gallagher, supra:* ''Equality and not identity of privileges and rights is what

is guaranteed to the citizen.'' According to the findings of the lower court, the Madison street school and its facilities were in many respects superior to any other school in the district, as was also the instruction, and in no respects was it inferior to any.

Our conclusion is, that the facts in this case did not authorize the granting an injunction against the school board. The case is, accordingly, reversed and remanded to the superior court of Maricopa county, with directions that the injunction be vacated and the case dismissed.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.

NOTE.—As to .the separation of white and colored pupils for purposes of education, see note in 13 Ann. Cas. 342.